**James D. YOUNG, Plaintiff,**

v.

**BAILEY CORPORATION, a New Hampshire corporation, and Joseph Emmi, jointly and severally, Defendants.**

No. 95–CV–75823–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 31, 1996.

Donald J. Gasiorek, Southfield, Michigan, for plaintiff.

Martin T. Wymer, Detroit, Michigan, for defendants.

## OPINION AND ORDER VACATING ORDER TO SHOW CAUSE AND GRANTING PLAINTIFF'S MOTION FOR REMAND

ROSEN, District Judge.

### I. INTRODUCTION

On October 24, 1995, Plaintiff James D. Young ("Plaintiff") commenced an action against Defendants Bailey Corporation and Joseph Emmi ("Defendants") in Wayne County Circuit Court. Plaintiff's complaint alleges that Defendant Bailey wrongfully discharged Plaintiff in breach of an employment contract, and that both Defendants violated Plaintiff's rights under Michigan's Elliott–Larsen Civil Rights Act by terminating Plaintiff's employment because of his age.

On November 29, 1995, Defendants removed this case from state to federal court on the basis of diversity of citizenship. Although both Plaintiff and Defendant Emmi are Michigan residents, Defendants contend that diversity jurisdiction nevertheless exists because Defendant Emmi has been fraudulently joined for the sole purpose of defeating federal court jurisdiction. On January 12, 1996, this Court issued an Order to Show Cause why this matter should not be remanded to state court, based on the Court's determination that Defendants' Notice of Removal did not adequately establish the claim of fraudulent joinder.

Contemporaneous with the Order to Show Cause, the parties further addressed the issue of fraudulent joinder. In particular, on December 15, 1995, Plaintiff filed a motion seeking remand and disputing Defendants' claim that Defendant Emmi is not a proper party to this suit. Defendants responded to Plaintiff's motion on January 4, 1996, providing further argument and affidavits in support of their claim that Defendant Emmi was fraudulently named in Plaintiff's complaint solely for the purpose of defeating removal to federal court.

Because the Court finds that Plaintiff's motion and Defendants' response adequately address the issue of fraudulent joinder, the Court vacates its January 12 Order to Show Cause. Moreover, after reviewing the materials filed by the parties, and for the reasons stated below, the Court finds that Plaintiff has alleged facts sufficient to state a claim against Defendant Emmi under Michigan's Elliott–Larsen Civil Rights Act. Accordingly, because this matter lies outside this Court's diversity jurisdiction, the Court remands this action to the Wayne County Circuit Court.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, Plaintiff states that he was employed at Defendant Bailey Corporation, a New Hampshire corporation with an office in Michigan, from October 1, 1993, until he was discharged on July 20, 1995. At the time of his termination, Plaintiff held the position of Senior Account Manager. Defendant Emmi, a Michigan resident, was Plaintiff's immediate supervisor at the time of Plaintiff's termination.

Plaintiff alleges that he first became aware of difficulties in his employment relationship with Bailey on July 11, 1995, when Defendant Emmi informed him that there were some "problems" with certain accounts. A few days later, Jay Corbett, Bailey's Director of Human Resources, allegedly told Plaintiff that his employment status was "shaky." The following day, Plaintiff was informed that his employment at Bailey was terminated.

Plaintiff filed a complaint in Wayne County Circuit Court on October 24, 1995, asserting two state-law claims. In Count I, Plaintiff alleges that Defendant Bailey breached its employment contract with Plaintiff by terminating him without just cause. In Count II, Plaintiff alleges that both Defendants violated Michigan's Elliott–Larsen Civil Rights Act, Mich.Comp.Laws § 37.2101 *et seq.*, by terminating Plaintiff's employment on account of his age. The allegations in support of Count II are quite vague; Plaintiff contends that his employment was terminated and he was generally treated differently because of his age, and that Bailey has since replaced him with a younger employee.

Defendants removed Plaintiff's suit to this Court on November 29, 1995, claiming that this Court possesses diversity jurisdiction over this matter notwithstanding the naming of Defendant Emmi in Plaintiff's complaint. In particular, in both their Notice of Removal and their response to Plaintiff's Motion for Remand, Defendants assert that Plaintiff has named Defendant Emmi as a party to this action solely to prevent removal to federal court. Defendants' response to Plaintiff's motion also includes the affidavits of Defendant Emmi and John J. Corbett, both of which state that Defendant Emmi neither recommended Plaintiff's discharge nor made the decision to terminate Plaintiff.

In support of his Motion for Remand, however, Plaintiff expressly alleges, albeit without supporting details, that Defendant Emmi's discriminatory treatment of Plaintiff led to his termination. Moreover, in an affidavit accompanying his motion, Plaintiff states that Defendant Emmi was both responsible for and made the decision to terminate his employment. Accordingly, Plaintiff

concludes that Defendant Emmi is properly named in the complaint, and that this matter therefore should be remanded to the Wayne County Circuit Court.

## III. *ANALYSIS*

In order to remove this matter to federal court, Defendant must rely on a combination of 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a). Section 1441(a) authorizes removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). In turn, § 1332(a) confers original jurisdiction upon federal district courts "where the matter in controversy ... is between ... citizens of different States." 28 U.S.C. § 1332(a). Finally, notwithstanding the authorization for removal in § 1441(a), § 1441(b) acts as a potential bar to removal by providing that matters lying within a district court's diversity jurisdiction "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

In light of these removal provisions, Defendants may remove Plaintiff's state court action to this Court only if they can establish that Defendant Emmi, who shares Michigan residency with Plaintiff, was fraudulently joined in that action. This in turn requires inquiry whether Defendant Emmi is subject to liability under Plaintiff's claim of discriminatory discharge. The parties agree that the definition of an "employer" in Michigan's Elliott–Larsen Civil Rights Act encompasses a supervisor who makes personnel decisions as an agent of a corporate employer. *See* Mich.Comp.Laws § 37.2201(a); *Jenkins v. American Red Cross*, 141 Mich.App. 785, 799–800, 369 N.W.2d 223, 230–31 (1985). Thus, if Plaintiff could establish that Defendant Emmi, his immediate supervisor, was "responsible for making personnel decisions affecting [P]laintiff," then Defendant Emmi would be subject to liability under Plaintiff's Elliott–Larsen claim. *Jenkins*, 141 Mich.App. at 800, 369

N.W.2d at 230.[1]

Consequently, this Court's determination whether removal is proper turns on the question whether Plaintiff has adequately alleged a basis for his claim against Defendant Emmi. Stated differently, this case is removable only if the Court concludes that Defendant Emmi was fraudulently joined for the purpose of defeating diversity jurisdiction, rather than being joined under a reasonable theory of liability. Fraudulent joinder is established by showing the absence of a "reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir.1968)).

Because Defendants seek removal, they have the burden of establishing the basis for this Court's jurisdiction. *Gafford v. General Electric Co.*, 997 F.2d 150, 155 (6th Cir.1993). Moreover, "[a]s a general rule, removability is determined by the pleadings filed by the plaintiff," and "all doubts arising from defective, ambiguous and inartful pleadings should be resolved in favor of the retention of state court jurisdiction." *Union Planters Nat'l Bank v. CBS, Inc.*, 557 F.2d 84, 89 (6th Cir.1977) (quoting *Greenshields v.*

*Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir.1957)).

Applying these principles to the instant matter, the Court finds that Defendants have failed to establish the fraudulent joinder of Defendant Emmi. Although Plaintiff's complaint does not specifically describe Defendant Emmi's alleged role in the decision to terminate Plaintiff, the complaint can be fairly read as raising an inference of Emmi's involvement in that decision. According to Plaintiff, he learned that his employment status was in jeopardy just a few days before he was discharged, when Defendant Emmi mentioned some "problems" with certain accounts. Although this allegation is a far cry from a "smoking gun," it at least suggests the possibility that Defendant Emmi's disclosure of those "problems" to higher levels of management led to Plaintiff's termination.[2]

Moreover, the affidavits submitted by Defendants do not refute the reasonable possibility[3] that Defendant Emmi could be subject to liability for the alleged discriminatory discharge of Plaintiff. The affidavits state that Defendant Emmi neither made the decision to terminate Plaintiff nor recommended that Plaintiff be terminated. The affidavit of John Corbett, Bailey's Director of Human Resources, further states that Defendant Emmi did not participate in the decision to terminate Plaintiff; rather, Corbett states

---

1. *Jenkins* does not indicate the degree of responsibility necessary to subject an employer's agent to liability. In particular, *Jenkins* does not expressly consider whether a supervisor may be held liable under the Elliott–Larsen Act if he participates in an unlawful employment decision, but is not solely responsible for that decision. However, because the *Jenkins* court determined that two different individuals, the plaintiff's immediate supervisor and a higher-level executive director, were both properly held liable, *Jenkins* strongly suggests that a showing of sole responsibility is not necessary to prevail in an Elliott–Larsen claim.

2. This Court is not prepared to say that such a disclosure, if it even occurred, would be sufficient to charge Defendant Emmi with liability under Michigan's Elliott–Larsen Act. Rather, the Court simply points out that Defendant Emmi's role in Plaintiff's termination remains a disputed issue in this litigation.

3. Courts within this District have stated two different standards for establishing fraudulent joinder. One court stated that the party seeking removal must show that there is "absolutely no possibility" that the plaintiff will be able to establish a claim against the non-diverse defendant. *See Brusseau v. Electronic Data Systems, Inc.*, 694 F.Supp. 331, 333 (E.D.Mich.1988). Other courts have found, however, that it is sufficient for the party seeking removal to show that the plaintiff has "no reasonable basis" for a claim against the non-diverse defendant. *See, e.g., Ludwig v. Learjet, Inc.*, 830 F.Supp. 995, 998 (E.D.Mich.1993); *Kelly v. Drake Beam Morin, Inc.*, 695 F.Supp. 354, 355 (E.D.Mich.1988). In *Alexander, supra,* the Sixth Circuit apparently adopted the more lenient "reasonable basis" standard, albeit without discussion. *See Alexander,* 13 F.3d at 949. Accordingly, in resolving the instant matter, this Court will consider whether Defendants have established that Plaintiff's claim against Defendant Emmi lacks a "reasonable basis."

that he made the decision "after consultation and input from senior management."

At this preliminary stage of the instant litigation, however, this Court is reluctant to find that these affidavits foreclose any reasonable basis for Defendant Emmi's liability. Under the Elliott–Larsen Act, Emmi can be held liable if he was "responsible for making personnel decisions affecting [P]laintiff." *Jenkins,* 141 Mich.App. at 800, 369 N.W.2d at 230. Thus, depending on how broadly one views the scope of the decisionmaking process, it is conceivable that Emmi, who was Plaintiff's immediate supervisor, could have played a sufficient role in the process leading to Plaintiff's termination to be deemed "responsible" for that ultimate decision, even if he did not make or recommend this final decision.[4] The Corbett affidavit does not flatly preclude this possibility, because it can be construed as referring only to the final termination decision, rather than the process leading up to that decision.

More importantly, the affidavits submitted by Defendants are directly contradicted by the affidavit submitted by Plaintiff in support of his motion for remand. In his affidavit, Plaintiff states that Defendant Emmi made the decision to terminate him, and that Emmi discriminated against Plaintiff on the basis of his age. Moreover, as noted earlier, the allegations of Plaintiff's complaint at least suggest that Emmi was involved in the process leading up to Plaintiff's termination. Given these factual disputes, and in light of the pre-discovery phase of this litigation, the Court concludes that Defendants have not established the absence of any reasonable basis for Plaintiff's claim that Emmi acted as an "agent" of Bailey as that term is construed in *Jenkins.*

The factual disputes surrounding Defendant Emmi's role in the decision to terminate Plaintiff distinguish this case from those cited by Defendants as supporting removal. In some of those cases, the courts pointed to the dearth of allegations linking the individual non-diverse defendant to the challenged personnel decision. *See Alexander v. Electronic Data Systems Corp.,* 870 F.Supp. 749, 753 (E.D.Mich.1994) ("[P]laintiff's complaint fails to specify *any* actions on the part of defendant Jeros, and merely alleges that defendant Brechtelsbauer was 'part of the management team that interviewed plaintiff.' The complaint does not allege any individual wrongs by the defendants."); *Freeman v. Unisys Corp.,* 870 F.Supp. 169, 173 (E.D.Mich.1994) ("In his complaint, plaintiff makes no specific allegations against either individual defendant with regard to racial discrimination."); *Fletcher v. Advo Systems, Inc.,* 616 F.Supp. 1511, 1515 (E.D.Mich.1985) ("Plaintiff failed to set forth in his complaint the involvement, if any, Defendant Murray had in his hiring and discharge."). In other cases, the courts focused on the uncontroverted facts showing the lack of involvement of the individual defendant in the challenged decision. *See Yanakeff v. Signature XV,* 822 F.Supp. 1264, 1266 (E.D.Mich.1993) ("[T]he facts in this case, as supported by depositions and sworn affidavits filed with the court, show that Forrester was not involved in the decision to terminate plaintiff."); *Fletcher v. Advo Systems, Inc.,* 616 F.Supp. 1511, 1515 (E.D.Mich.1985) ("The uncontroverted affidavits of the two individual defendants reveal that Murray not only did not participate in

---

4. In this regard, the Court respectfully declines to endorse the broad statement in other cases that "merely informational input by an employee or supervisor does not make them an agent of an employer that qualifies them for liability under the [Elliott–Larsen] Act." *Freeman v. Unisys Corp.,* 870 F.Supp. 169, 173 (E.D.Mich.1994); *see also Yanakeff v. Signature XV,* 822 F.Supp. 1264, 1266 (E.D.Mich.1993). In a case involving allegations of improper discrimination, the "merely informational input" provided by a supervisor could inject impermissible considerations into a subsequent decisionmaking process.

For example, a supervisor's negative evaluation could be based on discriminatory animus, and yet, under the rule stated above, the supervisor would escape liability even if more senior management relied solely on that negative evaluation in making a subsequent personnel decision.

Such a rule seems to contradict the notion of "responsibility" as construed by the *Jenkins* court. Moreover, given the early stage of this litigation, this Court is reluctant to delve too deeply into a determination of the precise contours of supervisor liability under the Elliott–Larsen Act.

the decision to discharge Plaintiff, but he also was unaware of that decision.").

Consequently, the Court finds that, under the present record, Defendants have failed to show that Defendant Emmi was fraudulently joined in this action solely for the purpose of defeating federal diversity jurisdiction. This conclusion in no way reflects any view of the Court regarding either the sufficiency of Plaintiff's allegations of age discrimination or the likelihood of Plaintiff's ultimate success in his claims against Defendants.[5] Rather, this Court merely finds that the factual uncertainty surrounding Defendant Emmi's involvement in Plaintiff's termination precludes a determination, at this early juncture, that Plaintiff has failed to state a reasonable claim against Defendant Emmi under the Elliott–Larsen Act.

## IV. CONCLUSION

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion for Remand be GRANTED. This matter is hereby REMANDED to the Wayne County Circuit Court. Furthermore, in light of this disposition, IT IS HEREBY ORDERED that the Court's January 12, 1996, Order to Show Cause be VACATED AS MOOT.

---

**5.** Indeed, if, after discovery, the state court determines that Plaintiff has failed to sustain his claim against Defendant Emmi, some case law suggests that Defendant Bailey might be able to again seek removal to federal court by revisiting the fraudulent joinder issue in light of the facts established at that point. *See, e.g., Poulos v. Naas Foods, Inc.,* 959 F.2d 69 (7th Cir.1992); *Wiacek*

*v. Equitable Life Assurance Soc'y,* 795 F.Supp. 223, 225–27 (E.D.Mich.1992). Of course, Bailey would have to satisfy the requirements of 28 U.S.C. § 1446(b). Moreover, this Court expresses no view on the issue of revisiting fraudulent joinder after the involuntary dismissal of the non-diverse defendant.