**Kim POCHES, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION and Diane Perry, Defendants.**

**No. 03–70095.**

United States District Court, E.D. Michigan, Southern Division.

June 6, 2003.

Dean T. Yeotis, Flint, MI, for plaintiff.

Stephen C. Sutton, Cleveland, OH, Martin T. Wymer, Southfield, MI, for defendant.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

ROSEN, District Judge.

### I. INTRODUCTION

Plaintiff Kim Poches commenced this suit in Genesee County Circuit Court, State of Michigan, on December 6, 2002, alleging that her former employer, Defendant Electronic Data Systems Corporation ("EDS"), discriminated against her on account of her gender, and that EDS and Plaintiff's former supervisor, Defendant Diane Perry, unlawfully retaliated against Plaintiff's complaints of gender discrimination by giving her a poor evaluation and then discharging her. Based on these allegations of discrimination and retaliation, Plaintiff asserted claims under Michigan's Elliott–Larsen Civil Rights Act (the "Elliott–Larsen Act"), Mich. Comp. Laws § 37.2101 et seq.

On January 8, 2003, Defendants removed the case to this Court, citing the Court's subject matter jurisdiction over suits between citizens of different states. See 28 U.S.C. §§ 1332(a)(1), 1441(a). In their notice of removal, Defendants state that Plaintiff is a citizen of Michigan, while Defendant EDS is a Delaware corporation with its principal place of business in Texas. Regarding the remaining Defendant, the notice of removal acknowledges that Diane Perry, like Plaintiff, is a Michigan resident. Nonetheless, Defendants maintain that removal is proper, and that Defendant Perry's citizenship should be disregarded, because there is no legal basis upon which an individual supervisor may be held liable under the Elliott–Larsen Act. In support of this claim of fraudulent joinder, Defendants cite the recent decision in Jager v. Nationwide Truck Brokers, Inc., 252 Mich.App. 464, 652 N.W.2d 503, 511–15 (2002), in which the Michigan Court of Appeals held that a supervisor cannot be held individually liable for sexual harassment claims brought under the Elliott–Larsen Act.

Through the present motion, filed on February 10, 2003, Plaintiff now challenges Defendants' reliance on Jager, and argues that this case should be remanded to state court for lack of subject matter jurisdiction. Specifically, Plaintiff observes that Jager construes a provision of the Elliott–Larsen Act which prohibits discrimination by an "employer." See Mich. Comp. Laws § 37.2202. In the present case, by contrast, Plaintiff has appealed both to this provision and to Elliott–Larsen's anti-retalia-

tion provision, which prohibits retaliation by a "person." *See* Mich. Comp. Laws § 37.2701. In light of this distinction, Plaintiff argues that *Jager* is not controlling here, and that the plain language of the Elliott–Larsen Act permits individual liability for claims of retaliation.

Plaintiff's motion has been fully briefed by the parties. Having reviewed these submissions, the record as a whole, and the pertinent statutes and case law, the Court now is prepared to rule on this motion. This Opinion and Order sets forth the Court's rulings.

## II. *ANALYSIS*

**A. Notwithstanding *Jager,* an Individual Supervisor Remains Subject to Liability for Acts of Unlawful Retaliation under the Elliott–Larsen Act.**

Because Plaintiff has not asserted any federal claims in this case, but only claims under Michigan's Elliott–Larsen Act, this Court's subject matter jurisdiction must rest, if at all, upon diversity of citizenship among the parties. As noted earlier, Defendants maintain that this Court has diversity jurisdiction because the non-diverse Defendant, Diane Perry, is a "sham" party who cannot be held liable under Plaintiff's state-law gender discrimination and retaliation theories of recovery. The Court agrees as to the first of these theories, but not as to the second.

▮ As the removing parties, Defendants bear the burden of establishing a basis for this Court's subject matter jurisdiction. *See Gafford v. General Electric Co.,* 997 F.2d 150, 155 (6th Cir.1993); *Young v. Bailey Corp.,* 913 F.Supp. 547, 550 (E.D.Mich.1996). More specifically, because Defendants appeal to the "fraudu-lent joinder" of Defendant Perry as the purported basis for this Court's diversity jurisdiction, Defendants must show "the absence of a 'reasonable basis for predicting that the state law might impose liability [on Defendant Perry] on the facts involved.'" *Young,* 913 F.Supp. at 550 (quoting *Alexander v. Electronic Data Systems Corp.,* 13 F.3d 940, 949 (6th Cir. 1994)). As noted, Defendants' argument on this point rests almost exclusively upon the recent ruling in *Jager, supra.*

In *Jager,* the Michigan Court of Appeals held that a supervisor who allegedly had sexually harassed the plaintiff-employee could not be held individually liable under the Elliott–Larsen Act. The Court began its analysis with the language of the Act itself, noting that it prohibits an "employer" from discriminating based upon sex or a number of other impermissible considerations. *See* Mich. Comp. Laws § 37.2202. The Act further states that an "employer" means "a person who has 1 or more employees, and includes an agent of that person." Mich. Comp. Laws § 37.2201(a). Although the latter clause arguably could be read as imposing personal liability upon an "agent" as encompassed within the definition of an "employer," the Court construed this clause as "meant merely to denote respondeat superior liability, rather than individual liability." *Jager,* 652 N.W.2d at 514–15. As support for this conclusion, the Court cited the decision in *Wathen v. General Electric Co.,* 115 F.3d 400, 403–06 (6th Cir.1997), in which the Sixth Circuit interpreted the nearly identical "employer" language of Title VII [1] and the Kentucky Civil Rights Act as precluding the imposition of personal liability upon individuals with supervisory control over a plaintiff-employee.

---

**1.** Title VII defines an "employer" as "a person ... who has fifteen or more employees ..., and any agent of such a person." 42 U.S.C. § 2000e(b).

In so ruling, the *Jager* Court acknowledged that it was overturning the existing Michigan Court of Appeals precedent on this point. Specifically, in *Jenkins v. Southeastern Michigan Chapter, American Red Cross*, 141 Mich.App. 785, 369 N.W.2d 223, 230–31 (1985), the Court of Appeals had held that individual supervisors could be held liable as "employers" for violating the anti-discrimination provision of the Elliott–Larsen Act, so long as they had "responsibility for making personnel decisions for" the plaintiff's corporate employer. The *Jager* Court declined to follow *Jenkins*, however, because it was not bound to do so, because *Jenkins* had relied on a federal district court decision that was implicitly overruled by *Wathen*, and "because we finds its reasoning unpersuasive." *Jager*, 652 N.W.2d at 513.

■ Returning to the present case, it is clear that *Jager* forecloses any state-law claim of gender discrimination against Plaintiff's former supervisor, Diane Perry. Indeed, Plaintiff herself apparently recognizes as much, as she has asserted this claim only against Defendant EDS, and not against Perry. Plaintiff's retaliation claim, in contrast, is brought against both Defendants. The question becomes, then, whether *Jager*'s ruling under Elliott–Larsen's anti-discrimination provision carries over to the Act's anti-retaliation provision.

In addressing this question, the Court begins with the self-evident proposition that these two provisions are not identically worded, and with the presumption that this distinction is meaningful rather than merely accidental or incidental. Section 202 of the Elliott–Larsen Act prohibits discrimination by an "employer," Mich. Comp. Laws § 37.2202, while section 701 of the Act mandates that a "person" shall not retaliate against certain types of protected conduct, Mich. Comp. Laws § 37.2701. As noted, the Act defines an "employer" as a "person who has 1 or more employees." Mich. Comp. Laws § 37.2201(a). When it opted to use the broader, unqualified "person" in the Act's anti-retaliation provision, in contrast to its adoption of the more limited term "employer" in the Act's anti-discrimination provision, the Michigan Legislature presumably was aware that the former term encompasses the latter, and presumably meant to prohibit a broader class of potential defendants from engaging in acts of retaliation.

■ The Sixth Circuit reached precisely this conclusion in a case involving an identically-worded Kentucky statute. In *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794 (6th Cir.2000), the Court found that a supervisor could be held individually liable under a Kentucky statute which prohibits retaliation by a "person." In so ruling, the Court distinguished its decision in *Wathen*, which addressed Title VII and Kentucky statutory provisions which forbid discrimination by an "employer." *See Morris*, 201 F.3d at 794. In light of this express statutory reference to a "person" rather than an "employer," the Court held that "[t]he Kentucky retaliation statute plainly permits the imposition of liability on individuals." *Morris*, 201 F.3d at 794. Likewise, it seems evident to this Court that the anti-retaliation provision of the Elliott–Larsen Act permits the imposition of liability on "persons," regardless of whether such a "person" might also be an "employer" subject to liability under the Act's anti-discrimination provision.

In arguing to the contrary, Defendants direct the Court's attention to various passages in *Jager* in which the Michigan Court of Appeals speaks broadly of individual versus employer liability under the Elliott–Larsen Act as a whole. At the outset of its analysis, for example, the Court described its undertaking as "to con-

sider the statutory language of the [Elliott–Larsen Act] and determine if the intent of the statute was to make individuals liable for violations of the act." *Jager*, 652 N.W.2d at 513. Similarly, at the conclusion of this analysis, the Court stated:

> Read as a whole, the CRA [*i.e.*, the Elliott–Larsen Act] envisions, in our opinion, employer liability for civil rights violations that result from the acts of its employees who have the authority to act on the employer's behalf rather than individual liability for those civil rights violations. Further, had our Legislature intended individual, rather than employer, liability under the CRA, it could have expressly stated so. Thus, we conclude that the CRA provides solely for employer liability, and a supervisor engaging in activity prohibited by the CRA may not be held individually liable for violating a plaintiff's civil rights.

652 N.W.2d at 515 (footnote omitted). Defendants contend that these passages in *Jager* foreclose individual supervisor liability for *any* violation of the Elliott–Larsen Act, at least in the employment context.

This Court declines, however, to wrench these statements out of the context of the *Jager* decision as a whole. *Jager*'s analysis rests entirely and exclusively upon the "employer" language found in the Elliott–Larsen Act's anti-discrimination provision. It follows, in this Court's view, that *Jager* does not purport to construe other provisions in the Act, such as the anti-retaliation provision, which are *not* directed solely at employers. As *Jager* itself recognizes, the Michigan Legislature "could

have expressly stated" its intention to impose "individual, rather than employer, liability," but chose not to do so in the Act's anti-discrimination provision. *Jager*, 652 N.W.2d at 515. The anti-retaliation provision, in contrast, *does* express this legislative intent, through its reference to "persons" rather than "employers." Accordingly, just as *Jager*'s holding rests on the language of the statutory provision at issue in that case, this Court's ruling rests on the *different* language of the statutory provision at issue here.

This Court recognizes, of course, that it is bound by the decisions of Michigan's intermediate appellate courts on a matter of Michigan law unless it is convinced that the Michigan Supreme Court would decide the issue differently. Indeed, the Court reaffirmed this principle earlier in this litigation, in its January 30, 2003 Order to Show Cause.[2] Yet, as set forth above, the Court does not read *Jager* as weighing in on the proper scope and construction of the Elliott–Larsen Act's anti-retaliation provision. Indeed, in this regard, it is noteworthy that the *Jager* Court relied in part on the Sixth Circuit's decision in *Wathen*. Just as the Sixth Circuit later distinguished *Wathen* on the basis of the different language used in the anti-discrimination and anti-retaliation provisions of the Kentucky Civil Rights Act, *see Morris*, 201 F.3d at 794, this Court predicts that the Michigan courts would draw the same distinction based upon the contrasting "employer" and "person" language in different provisions of the Elliott–Larsen Act.[3]

---

**2.** The Court also cited this rule in a recent decision in which it determined that it was bound to follow *Jager*. *See United States ex rel. Diop v. Wayne County Community College District*, 242 F.Supp.2d 497, 506–08 (E.D.Mich.2003). As a result, the Court dismissed the Elliott–Larsen discrimination

claims asserted against the individual defendants in that case.

**3.** The Court notes that Judge Edmunds recently reached the same conclusion in an unpublished decision, remanding a case in which the plaintiff asserted state-law age discrimination and retaliation claims against her

Finally, Defendants maintain that Plaintiff's interpretation of the term "person" in the Act's anti-retaliation provision would preclude the imposition of respondeat superior liability against an employer under that provision. In essence, Defendants argue that Plaintiff can pursue individual liability against Diane Perry or respondeat superior liability against her former employer EDS by virtue of the conduct of Perry or other EDS employees, but not both. This contention, however, overlooks the Elliott–Larsen Act's broad definition of a "person," which encompasses individuals, agents, and corporations, among other legal entities. *See* Mich. Comp. Laws § 37.2103(g). The inclusion of individuals under this definition permits the imposition of personal liability against Defendant Perry, while the references to agents and corporations would, under *Jager*, authorize respondeat superior liability against Defendant EDS for the actions of its agents, including Defendant Perry.

This Court has long and steadfastly envisioned its task as giving effect to the plain language of statutes, rather than presuming, whether on policy or other grounds, that the Legislature meant something that it did not say. Here, the Michigan Legislature has clearly spoken—it has prohibited retaliation by any "person," in contrast to its prohibition on discrimination by an "employer," and it has expressly defined "person" more broadly than "employer," with the former encompassing the latter. Following this plain language where it naturally leads, the Court con-

cludes that the scope of liability is broader under the Elliott–Larsen Act's anti-retaliation provision than under the Act's anti-discrimination provision. If this is not what the Michigan Legislature intended through its use of different terms in the two provisions, it is the task of that body, and not this Court, to amend the Act accordingly. As it presently reads, however, the Act's anti-retaliation provision authorizes the imposition of individual liability, and Plaintiff's claim against Defendant Perry is not subject to dismissal on this ground.

**B. The Court Cannot Say as a Matter of Law that Plaintiff Could Prove No Set of Facts Under Which Defendant Perry Could Be Held Individually Liable.**

■ Alternatively, even if supervisors remain subject to liability under the Elliott–Larsen Act's anti-retaliation provision, Defendants maintain that there is no basis upon which to impose such liability on Diane Perry in this case. In support of this contention, Defendants have produced an affidavit from Diane Perry stating (i) that Plaintiff was not under her supervision for the last several months of Plaintiff's employment at EDS, and (ii) that she neither made the decision to terminate Plaintiff nor participated in this decision. It follows, in Defendants' view, that Plaintiff cannot establish Diane Perry's involvement in any allegedly retaliatory discharge.

former employer and two former supervisors. *See Barnett v. Target Corp.*, No. 02–74550 (E.D.Mich. Feb. 7, 2003) (attached as Ex. 1 to Plaintiff's Reply Brief). As Defendants point out, however, Judge O'Meara has reached the opposite result, construing *Jager* as wholly foreclosing individual liability for supervisors under the Elliott–Larsen Act. *See Klink v. Metavante Corp.*, 2002 WL 31962610, at *1–*2

(E.D.Mich. Dec.16, 2002). This Court believes that *Barnett* states the better view, both for the reasons set forth in this Opinion, and because *Klink* does not consider (and the plaintiff in that case failed to point out) the different language used in the Elliott–Larsen Act's anti-discrimination and anti-retaliation provisions.

The Court readily concludes that this issue cannot be resolved as a matter of law on the pleadings alone. Plaintiff alleges in her complaint that she received poor job performance ratings in retaliation against her charges of gender discrimination. It appears to be undisputed that Defendant Perry conducted Plaintiff's most recent performance evaluation a few months before Plaintiff's discharge, and that Perry rated Plaintiff poorly. Under these facts and allegations, it remains open for Plaintiff to prove that Defendant Perry's poor evaluation was both retaliatory and a causal factor in Plaintiff's subsequent discharge.

Even if the Court were inclined to stray beyond the pleadings, Defendant Perry's affidavit does not stand wholly uncontradicted, even in the limited record put forward to date. Specifically, in an affidavit submitted in support of the present motion, Plaintiff states: (i) that Diane Perry conducted her last performance evaluation at EDS and gave her a low rating; (ii) that this evaluation occurred shortly after Plaintiff complained to Perry of gender discrimination at EDS; (iii) that there were certain irregularities in the way this evaluation was conducted; and (iv) that Plaintiff was told at the time of her discharge that the low rating in her most recent evaluation was a key factor in EDS's decision. In light of the factual disputes raised in Plaintiff's and Perry's competing affidavits, the Court cannot say as a matter of law that Defendant Perry has been fraudulently joined as a party in this action.

### III. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's February 10, 2003 Motion for Remand is GRANTED.

### ORDER OF REMAND

The Court having this day entered an Opinion and Order granting Plaintiff's Motion for Remand,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this case be REMANDED to Genesee County Circuit Court for further proceedings.